# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| WALEED KHALID ABU AL-WALEED AL HOOD AL-QARQANI; *et. al*, <br> *Petitioners*, <br> v. <br> CHEVRON CORPORATION; CHEVRON CORPORATION, USA INC., <br> *Respondents-Appellees*. <br> *In re Attorney Edward C. Chung* <br> *Movant-Appellant* | No. 24-600 <br><br> DC No.: 4:18-cv-03297-JSW <br> ND Cal., Oakland <br><br> APPELLANT'S RESPONSE AND OPPOSITION TO APPELLEE, CHEVRON'S MOTION FOR SUMMARY DISPOSITION PURSUANT TO NINTH CIRCUIT RULE 3-6 |

**TO:** The United States Court Clerk for the Ninth Circuit Court of Appeals; and

**TO**: Thomas Hungar and Gibson Dunn & Crutcher, LLP; Counsel for Appellees, Chervon

## I. INTRODUCTION

**COMES NOW**, attorney Edward C. Chung as Appellant and as an officer of the Ninth Circuit Court of Appeals and hereby respectfully submits Appellant's Response and Opposition to Appellees, Chevrons' Motion for Summary Disposition Pursuant to Ninth Circuit Rule 3-6. Chevron's motion for summary affirmance of a U.S. district court's *punitive* sanctions award against undersigned counsel without a hearing or trial, omits material facts and substantive legal arguments contained within Appellant's Opening Brief [Dck#11-1] and further fails to address why a **court** *Zoom* audio and video recording [COA Case: 19-17074, Dck#: 87] evidencing Chevron's *ex parte* communication with a Ninth Circuit Court Judge to impose monetary sanctions is being concealed from the public record, the record on appeal and from undersigned counsel on this matter. The factual and legal grounds for denying a request for an expedited disposition is predicated on the following:

1

## II. SUMMARY OF RESPONSE

Summary dispositions are rarely granted on appeals and in this case the imposition of over a quarter of a million dollar monetary sanction against a Ninth Circuit Court lawyer for filing a procedurally permissible motion requesting permission to file a demonstrative exhibit is not only unprecedented and facially absurd, it is a judicial byproduct of placing a Ninth Circuit Court judge's admitted friend, former supervisor/boss and prior client/oil cartel in the public spotlight for witness tampering, foreign corrupt practices and the falsifying of court documents. Understandably, Chevron and their counsel's filing of a motion for a summary disposition is to fasttrack an appellate dismissal of this case without further judicial, legislative or executive oversight; however, the jurisdictional, procedural and substantive legal arguments Chevron pontificates for premature dismissal is meritless, misleading and must be denied as a matter of law.

While the blueprint of Chevron's legal briefing is to shift the spotlight from its own perpetration of fraud and intransigence upon U.S. courts by discrediting the merits of Appellant's legal arguments by using words such as "sham" in these and prior proceedings, it is important to note that while the merits decision in *Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018 (9th Cir. 2021) may be a subject of an appellate recall due to judicial and attorney misconduct by Ninth Circuit Court Judge Eric D. Miller, Chevron and their counsel (Thomas Hungar), the merits ruling is separate from the

monetary sanctions award that was imposed <u>after</u> this Court issued a merits decision on alternative legal grounds with <u>no order of remand</u> and <u>after</u> this Court terminated its jurisdiction.

Moreover, Appellant is compelled to bring to this tribunals attention that the judicial actions taken by Ninth Circuit Court Judges Eric D. Miller and A. Wallace Tashima is a matter under review by Ninth Circuit Court Judges Mary M. Schroeder, Marsha S. Berzon and John B. Owens  and that a  Ninth Circuit Court Rule 46-2(d) proceeding has been requested. *See*, *In re Edward Chung*, Case# 23-80073. *See*, **Exhibit 1**, Appellant's Response to an Order to Show Cause; no disposition has been made on this matter to date.

Aside from the foregoing, whether an Appellate Commissioner or Judge decides this matter, Appellant respectfully asks that pursuant to Canon 2 (b) of the Code of Conduct for United States Judges, that a judge presiding over this motion disqualify himself in accord with 28 U.S.C. §455 if a relationship with Ninth Circuit Judges Eric D. Miller, A. Wallace Tashima or Chevron's counsel may influence the decision of this pending motion. Moreover, because it is the professional opinion of undersigned counsel, who has practiced criminal law for nearly 20 years, that the conduct by Judges  Eric D. Miller, A. Wallace Tashima, attorneys Thomas Hungar,

Anne Champion, Matthew C. Reagan[1] and Chevron's corporate executives   is "legal thuggery"[2] and/or a violation of undersigned counsel's constitutional rights under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), any clerk or third-party aiding in this continued criminal concealment of judicial and corporate corruption may be criminally liable as an accomplice under 18 U.S.C. § 2.

As for the substance of Chervon's motion for summary affirmance, it is based on the **erroneous** assertion that: (1) This Court lacks jurisdictional authority to consider the U.S. district court's award on attorneys' fees because Appellant allegedly did not timely appeal an attorneys' fees award; (2) Appellant purportedly did not address the calculation of attorneys' fees in his Opening Brief; (3) Pursuant to the *law of the case doctrine*,  a court is generally precluded from reconsidering an

---

[1] Ninth Circuit Court Judge Eric D. Miller's law clerk was an associate for Chevron's counsel at Gibson Dunn & Crutcher, LLP between May 2015 to July 2015. He then clerked for Judge Miller while the appeal was pending in the *Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018 (9th Cir. 2021) matter. This was never disclosed to Appellant or Appellant's clients. While this was concerning on its face, it was also very odd because Matthew Reagan, resided in San Francisco, California next to Gibson Dunn's law offices while Judge Miller's chambers are in the Nakamura courthouse in Seattle, Washington. Days after the merits decision was entered against Appellant's client, he was offered a paid position with Gibson Dunn and "returned" back to work for Chevon if he ever even left. Need we say more?

[2]  In 2023 a U.S District Court imposed $925,000 sanctions against Gibson Dunn. In California Gibson Dunn was sanctioned for tampering with a witness. The Montana Supreme Court sanctioned Gibson Dunn $9.9 million dollars for intimidation of adversary and for "legal thuggery".

4

issue that has already been decided by the same court, or a higher court in the identical case." *See*, *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993); *emphasis added*; and finally (4) Appellant's arguments are so insubstantial as to not justify further proceedings. While Chevron's position is that their *ex parte* communication with Ninth Circuit Court judges and targeting of U.S. lawyers who expose them and their attorneys are "insubstantial issues" for this Court to consider; Appellant disagrees. The reasons are as follows:

**First**, Chevron's lengthy footnote argument on Page 2 and 3 of its motion is convoluted and confounding with no case law support or even incorporation of citations into their table of authorities. While Chevron acknowledges, "Mr. Chung **timely filed his appeal** on February 1, 2024" their argument flip-flops between Fed. Rul. Civ. Proc. 54 and 58 to argue that the appeal is somehow timely but not timely based on the October 23, 2023 sanctions order it identifies as an "award of attorneys' fees". This argument by Chevron is anemic, because as indicated in Fed. Rul. Civ. Proc. 54 (d) 2 E, attorneys' fees awards under Fed. Rul. Civ. Proc. 54 do not apply to claims for fees and expenses as sanctions. Furthermore, as briefed in Appellant's Opening Brief, Appellant timely filed a Notice of Appeal pursuant to Fed. R. App. P. 4, wherein sanctions awards can be appealed within 30 days of entry of a final judgment. Additionally, under Ninth Circuit authority, sanctions appeals, particularly sanctions based on "inherent authority" may only be appealed after entry

5

of judgment. *See*, *Stanley v. Woodford*, 449 F.3d 1060 (9th Cir. 2006), *see also*, *Sec. & Exch. Comm'n v. Smith*, 710 F.3d 87 (2nd Cir. 2013). As briefed in Appellant's Opening Brief, inherent authority awards are "<u>punitive</u>" and a party sanctioned is afforded the same constitutional protections provided in a criminal trial by jury.

While Chevron has deceitfully labeled their motions for sanctions as "compensatory sanctions" following the post-mandate sanctions Chevron's counsel, Anne Champion expressly admitted was never requested for by Chevron, it is important to note that whether a sanction is civil or criminal, an appellate court looks to the character of the relief granted, not the terminology. *See*, *Nat'l Abortion Fed'n*, 926 F.3d 534, 548 (2019) ["**the label the district court affixes to sanctions is not dispositive**"].

Again, sanctions based on "inherent authority" are punitive as a matter of law and pursuant to U.S. Supreme Court and Ninth Circuit authority, circuit courts are limited to imposing Fed. Rul. App. P. 38 (frivolous appeal). As such, the appellate sanctions imposed on undersigned counsel are *void ab initio* and to date no procedurally due process hearing or trial has taken place. Ergo, as a matter of U.S. Supreme Court authority, Appellant "*must be afforded the full protection of a criminal jury trial," including the right to be advised of the charges, the right to a disinterested prosecutor, the right to assistance of counsel, a presumption of innocence, proof beyond a reasonable doubt, the privilege against self-*

*incrimination, the right to cross-examine witnesses, the opportunity to present a defense and call witnesses, and the right to a jury trial if the fine or sentence imposed will be serious.*" *See*, *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017).

In the case at bar, neither the U.S. Circuit Court nor the U.S. District Court has ever conducted a procedurally complaint hearing or a trial, nor have these tribunals even properly adjudicated sanctions or explained how imposition of fees were calculated within the court order. Because Appellant was denied his constitutional right to a hearing and/or a trial on sanctions, on October 24, 2023 he requested a formal investigation and oral argument be set concerning these sanctions [ER 148-149]. Disregarding its judicial function, the lower court struck both hearings concerning sanctions and rubber stamped a court order drafted by Chevron; there was no ruling on Appellant's objections or explanation on attorneys fees which is *per se* reversible. *See*, **Exhibit** 2. While Chevron can argued that a sanctions hearing took place in the court of appeals after it terminated jurisdiction, as briefed below, appellate courts are statutory tribunals that cannot conduct jury trials and even if they could, pursuant to U.S. Supreme Court authority, *Withrow v. Larkin*, 421 U.S. 35 (1975), "a fair tribunal is a basic requirement of due process". My appellate tribunal was, to say the least, suspect.

In the case at bar, no impartial tribunal can disagree that there was no jury trial, and concerningly the presiding judge, A. Wallace Tashima appointed Chevron to represent the court; the firm that Appellant reported for misconduct. To date this Ninth Circuit judge has blocked public access to a court *Zoom* audio and video recording evidencing how the decision on sanctions was made before a hearing was even conducted. Arguably, if Chevron and its counsel were the self-proclaimed impartial prosecutors for the Court, then they committed a *Brady* violation by not producing the court *Zoom* audio and video recording showing illicit *ex parte* communications with a Ninth Circuit Judge Tashima, the same Judge who made a sanction recommendation with no citation to the procedural rule allowing Appellant and any Ninth Circuit lawyer to file and attach "any document" to a motion pursuant to Fed. Rul. App. P. 27-1. *See*, *Brady v. Maryland*, 373 U.S. 83 (1963).

**Second,** Chevron's argument that Appellant did not address or contest the amount of attorneys in his Opening Brief is evidence of 1 of 3 thing. Number 1, Chevron did not read Appellant's Opening Brief. Number 2, Chevron once again makes misrepresentations to the Court that are contradicted by the record. Number 3, Chevron's motion for summary disposition was written by Chatgpt. Both in the lower court evidentiary record [ER 67- 80 & ER 123-145] and in Appellant's Opening Brief, the calculation of attorneys' fees is specifically addressed by Appellant. *Exempli gratia,*

> ….we must samurai chop the purported billables hours incurred after the denial of the motion on August 12, 2021, <u>wherein instead of a whopping $251,313.72, this Court, per the express language contained in appellate "transfer" order would only have authority to award **$4,916.40**</u> in billables that accounted for attorneys' fees accounted that Chevon "addressed" between July 29, 2021 to August 12, 2021.

*See*, Appellant's Opening Brief, Page 50; *emphasis added*.

The proof is in the jurisprudence pudding as Appellant has already argued that **if** the district court were to follow the appellate "transfer order"[3], the calculation of attorneys' fees would be limited to the time Chevron's counsel spent on addressing the motion that Appellant filed requesting permission to file a demonstrative exhibit; **$4,916.40**. Respectfully, this would amount to a **$263,367.45** discount on inflated and attorneys' fees awarded by a Judge Miller to his admitted friend and former client; a violation of Section 320, Rule 4 (a) 1 A of the Rules for Judicial-Conduct and Judicial-Disability Proceedings and Code of Conduct for United States Judges which reads, in part, as follows:

**Cognizable misconduct includes:**

(A) using the judge's office to obtain **special treatment for friends** or relatives;

*Id.*; *emphasis added*.

---

[3] In 235 years of our constitutional republic, there is no such thing as an appellate "transfer order".

9

**Third**, Chevron's *law of the case doctrine* argument that a court is <u>generally</u> precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the <u>identical</u> case" has been foiled once again by Appellant's briefing both in the lower court and in Appellant's Opening Brief. While Chevron's cites *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) for the proposition that a district court is handcuffed is revisiting legal issues, it conceals the exceptions delineated in the case they cite, which isin part, that the  (1) the <u>first decision was clearly erroneous</u> and (2) *a <u>m</u>*<u>anifest injustice would otherwise result</u>. *Id.*, at 1157; *emphasis added*. Applying these factors not addressed in Chevron's Motion for Summary Disposition, it is clear that the first decision was erroneous and it would be a manifest injustice to impose sanctions upon an attorney where due process was violated and wherein the attorney followed an appellate procedural rule for filing a motion seeking permission to a demonstrative exhibit to a "T".

**Fourth,** Chevron's counsel, <u>Thomas Hungar's</u> briefing that Appellant's arguments are so insubstantial as to not justify further proceedings is 10 pounds of legal excrement in a 5 pound bag. If you elect to purchase an admission ticket on the Chevron roller coaster into legal fantasy land then you have to somehow buckle yourself in to accept, *inter alia,*  that rule by law as opposed to rule of law is the new standard/fad of our Article III courts, federal judges presiding over cases are allowed to engage in *ex parte* communications with opposing counsel  to sanction their

10

adversary, federal judges are permitted to block public access to a court video and audio recording exposing judicial and attorney misconduct. Chevron's argument that the deprivation of due process and the imposition of a **$268,283.85** sanctions award for filing a procedurally permissible motion requesting judicial permission to file a demonstrative exhibit is so insubstantial as to not justify further proceedings demonstrates that we are not dealing with reasonable people; but rather individuals that have compromised their oaths as attorneys in exchange for their billable hours.

As recognized in multiple circuits, appellate courts are reluctant to grant motions for summary disposition in cases involving complicated legal questions. While there may be grounds for a summary reversal disposition by Appellant due to a clear-cut violation of his constitutionals rights, Chevron complicates the distinction between punitive versus compensatory sanctions because of their mischaracterization and misrepresentation of the law.

*Fifth*, as for Chevron's arguments that <u>after</u> the Ninth Circuit issued a merits decision with no remand and it thereafter terminated its jurisdiction *via* an appellate mandate, it still maintains jurisdictional to impose monetary and disciplinary sanctions against an attorney is equivalent to pontificating that after a football game is done, the referee follows the quarterback home and penalizes him for not doing the dishes. Respectfully, this simply is an incorrect statement of the law and Chevron's counsel fails analysis shamefully claims ignorance in understanding the

distinction between appellate and district court authority. Contrary to Chevron's analysis, after *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), the Ninth Circuit declared that what amounts to Rule 11 sanctions in U.S. district courts do not apply in U.S. circuit courts." *See*, *Louisiana-Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260, 1266 [9th Cir. 1990]. *See also*, *In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109, 119 n.4 (2d Cir. 2000) [**Rule 38, not Rule 11, governs sanctions on appeal**]; *DDI Seamless Cylinder Int'l v. General Fire Extinguisher Corp.*, 14 F.3d 1163, 1167-68 (7th Cir. 1994) [**Circuit courts are limited to Rule 38 when seeking to impose sanctions**]; *Cottrell v. Bendix Corp., Nos.* 89-1867, (6th Cir. Sept. 28, 1990) [**Rule 11 not applicable to appellate proceedings**].

### III. FACTUAL AND PROCEDURAL BACKGROUND

The rudimentary tenets of our constitutional republic over the past 235 years has been the rule of law, not rule by law. However, in order to maintain and preserve the integrity and public confidence in our Article III courts, those cloaked with judicial authority share a solemn oath with lawyers as officers of the court to uphold the Constitution of the United States and its laws faithfully to the best of their knowledge and ability. This begins and ends with policing and protecting courts here and overseas from threats to our system of justice. What is justice from a 20th century Ronald Dworkin standpoint? Simply put, there is no law beyond the law.

12

Here U.S. judges have exercised jurisprudence way beyond what is permitted as a matter of law. This can be objectively observed because both the factual and procedural background of this case evidences an abrogation of the rule of law. Nothing undersigned counsel or opposing counsel writes in this or prior proceedings need to be believed or taken at face value because the public record, or at least the portion of the public record that has not been blocked and concealed arbitrarily by judges, vindicates Appellant. Let's not digress further and revisit the underlying record:

**A. U.S. District Court for Northern District of California – June 2018 to 2019**

In 2018, members of the Saudi Royal family as well as other owners of land in Ras Tanura, Saudi Arabia, sought confirmation and enforcement of a 2015 foreign arbitral award in the United States against Chevron for non-payments of rents owed pursuant to an oil concession agreement. Both during arbitration proceedings in Egypt and during the confirmation and enforcement proceedings in the United States, it was revealed that Chevron used political influence overseas (foreign corrupt practices) to threaten Saudi landowners to withdraw from seeking enforcement of their arbitral award. On November 7, 2018, Appellant, attorney Edward C. Chung, with the law firm of Chung, Malhas & Mantel, PLLC wrote a letter [Dck# 101] to U.S. District Court Judge Jeffrey White putting the lower court on notice of these threats and Chevron's witness tampering.

13

In an effort to evade legal exposure and prospective criminal liability for witness tampering, Chevron and their counsels concocted numerous false narratives and unloaded a dump truck of documents on Appellant and the lower court for was suppose to be a summary proceeding. In their haste to bury the truth, they mistakenly included "**highly confidential**" documents from high ranking Saudi officials in the Saudi Embassy to instruct the Egyptian General Prosecutor, Hisham Muhammad Zaki Barakat, to prosecute the arbitration judges, the Appellant's clients that Chevron failed to pay rent to as well as threaten their overseas attorneys with criminal prosecution.

On December 21, 2018, after being exposed that their claims of fraud were nothing more than a false narrative, Chevron and their counsel forged and filed a document, written on plain white paper and translated perfectly from Arabic to English that Chevron represented to the court to be an Egyptian Prosecutor's Report that the alleged criminal case overseas that were previously dismissed had been reopened [Dck# 119-1] for lack of probable cause and Chevron being sanctioned. While this "killstep" tactic that Gibson Dunn has a pattern of employing in proceeding against adversaries, in this instance they underestimated Dr. Dima N. Malhas, an Arabic speaking attorney/partner with Chung, Malhas & Mantel who read the concocted official report and had three Arabic linguist certify that it was nothing more than jibber-jabber; a fugazi. Despite these acts being

14

exposed, the lower court, which has original jurisdiction to confirm and enforce a foreign arbitral award, it erroneously dismissed the case on the basis it lacked subject matter jurisdiction which was expressly contrary to the statutory language of 9 U.S.C, §203 that confers U.S. district courts with original jurisdiction.  As recognized by this Court, that dismissal was in error which was exactly why Appellant and his clients appealed the dismissal to the Ninth Circuit Court of Appeals in 2019.

**B. U.S. Ninth Circuit Court of Appeals – October 2019 to November 29, 2021**

U.S. Ninth Circuit Court Judge Eric D. Miller, shortly after his appointment by U.S. President Donald J. Trump and Judge Miller's May 20, 2019 Ninth Circuit investiture, was assigned to the appellate panel in the matter, *Al-Qarqani, et. al v. Chevron Corp.*, 8 F.4th 1018 (9th Cir.2021). Chevron was a former client of Judge Miller's law firm Perkins Coie, LLP; a Seattle based law firm that Judge Miller was Partner. Thomas Hungar, with the law firm of Gibson, Dunn & Crutcher, LLP ("Gibson Dun"), was lead appellate counsel for Chevron and Judge Miller's former Supervisor and admitted friend. Judge Miller, whose chambers are in Seattle, Washington, appointed Matthew C. Reagan as his Law Clerk. Mr. Matthew C. Reagan was an associate of Gibson Dunn and was residing in San Francisco, California where Gibson Dunn's law office was during the pendency of this appeal. Five (5) days after the issuance of an adverse merits decision against Appellant's clients, Mr. Matthew

15

C. Reagan stopped working for Judge Miller and "returned" back, if he ever left,  to work as a paid Associate Attorney of Gibson Dunn; the counsel representing Chevron.

Due to recorded threats to Appellant's client to withdraw from enforcing their rights in enforcement proceedings and upon discovering that Chevron and/or their legal counsels **verifiably** forged district court documents and was using political influence overseas ("foreign corrupt practices") to threaten arbitration judges and lawyers, Appellant conducted due diligence on the assigned judge which revealed a definitive conflict of interest in having Judge Miller preside over an appeal of his former client and friend. Accordingly, Appellant filed a 28 U.S.C. §455 motion to disqualify Judge Miller in presiding over the appeal. Under §455, a U.S. judge presiding over an appellate proceeding "**shall disqualify himself**" in a matter when his "**impartiality might reasonably be questioned**." Judge Miller denied Appellant's motion and continued to proceed forward in handling this appeal.

Upon Appellant exposing that Judge Miller's former friend, supervisor and client had engaged in witness tampering, foreign corrupt practices and the forging of court documents, he issued an adverse merits decision on alternative legal grounds against Appellant's clients. There was no appellate order of remand back to the lower court; however, he ruled that all motions filed by Appellant and Chevron were moot. On November 29, 2021 an appellate mandate was issued terminating appellate jurisdiction.

**C. <u>Star Chamber/ Sanctions Court – December 14, 2021 to June 26, 2023</u>**

After the Ninth Circuit terminated its jurisdiction *via* an appellate mandate, Judge A. Wallace Tashima commenced sanctions proceedings purportedly on behalf of the Ninth Circuit; more like I his individual capacity as opposed to official. He appointed Chevron's counsel, Gibson Dunn & Crutcher, LLP to represent the Court in assessing sanctions against Appellant. On March 11, 2022 he ordered Appellant to appear at 9:30 AM for a 10:00 AM court mandated *Zoom* audio and video recorded hearing. Appellant was instructed he would need to press record on *Zoom* because the hearing would be a matter of public record. Appellant complied; however, at approximately 9:50 AM Judge Tashima showed up in street clothes and <u>did not know</u> he was being audio and video recorded and conveyed to someone not on screen what sanctions did Chevron want him to impose against Appellant. Upon being informed he was being recorded, he quickly put on his judicial robe and proceeded to conduct the hearing as if nothing happened. After Appellant jaw closed from shock, Judge Tashima informed Appellant he did not know what the legitimacy of the article meant, but informed Appellant that his function was <u>not</u> to make disciplinary recommendations. It is important to note that in that hearing <u>Chevron's counsel, the seasoned and renowned attorney Anne Champion, specifically stated Chevron did not seek sanctions against attorney Chung</u>. Perhaps this was because the time for sanctions **<u>under the law</u>** passed and the jurisdiction was terminated.

17

After the hearing, Appellant attempted to retrieve the do tell all audio and video recording docketed under COA Case: 19-17074 – ECF 87]; he was denied access.  He was then informed by the Chief Deputy Clerk of Operations for Ninth Circuit that if Appellant desired a copy of this public record, he needed to file a motion with Judge Tashima to release the public record…that's a first. Truly, this was both odd and suspect because there was no motion or court order to seal any record. Nevertheless, Appellant, like a good lawyer should, filed a motion to compel to Judge Tashima; however, he "denied" the motion compel as "unnecessary".

Unnecessary? Thats like having someone else's audio and video evidence of someone else committing a crime in a criminal trial, but not allowing an innocent defendant to have access or present the evidence. Unnecessary? Well, maybe to his cause, but not mine, as this *Zoom* video was evidence of some shady transaction's takings place in the Ninth Circuit. In order to assure impartiality, Appellant filed a motion for disqualification against Judge Tashima on the basis that if Judge Tashima denied access to a public record concerning Appellant, then how could Appellant defend himself in any sanctions proceeding? Judge Tashima refused to disqualify himself on basis there was, "no evidentiary support." Wow! Lets play the logical syllogism out? If you Judge Tashima has the evidence, does not allow Appellant to have access to it, then how can I have the evidentiary support?

18

On August 25, 2022, Appellant, like an ethical lawyer should, wrote a letter to Judge Tashima and Judge Miller pursuant to Washington Rule of Professional Conduct 8.4 (f) which provides it is professional misconduct for a lawyer to, "knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law". Washington Rule of Professional Conduct 8.4 goes on to state:

> A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists.

*See*, RPC 8.4, Commentary 6; *emphasis added*.

On August 26, 2022, Judge Tashima and Chevron's counsel, Anne Champion, had a one-on-one video recorded hearing, wherein she presented oral argument. At the one-on-one hearing, Judge Tashima struck all of Appellant's exhibits and proposed witnesses and concluded the proceeding. On **October 22, 2022** he filed his recommendation for disciplinary sanctions and an award of attorneys fees.  His report makes no reference to Fed. Rul App. P. 27-1 that expressly permitted the filing. Despite representing to Appellant in the March 11, 2022 pre-hearing conference there was no disciplinary recommendations to be made and Chevron's counsel, Anne Champion stating,

> MS. CHAMPION:·....Chevron did not file a motion here, ***did not -- you know, did not seek sanctions here***.

> *See*, COA-Dck# 94-3 (Page 7, Lines 7-9;
> *emphasis added*.)

Judge Tashima recommended both monetary and disciplinary sanctions against undersigned counsel.

## D.    U.S. District Court – "Transfer Order"- February 2022 to August 2022

Returning to the U.S. District Court was not therapeutic. Respectfully, while Gibson Dunn is not the law firm undersigned counsel would choose to represent his legal interests, it did appear that Chevron's law firm was representing Chevron and Appellant in the lower court. Chevron's attorneys were charitable enough to label sanctions as "compensatory", they calculated and inflated attorneys sanctions with innovative arithmetic, they drafted Judge White's judgment and order, and the trial court relieved itself and Appellant by not ruling on objections, striking scheduled oral arguments and rubber stamped a sanctions order drafted by Chevron's counsels.

While this sounds absurd, this is precisely what happened in the lower court. There was no hearing on sanctions, no trial on sanctions as required by law, no ruling on objections and finally court order by the Court addressing attorneys' fees.

## IV.    LEGAL ARGUMENT

### A.    Chevron Motion for Summary Affirmance Does Satisfy the High Appellate Standard for Summary Disposition.

As previously briefed and addressed, summary dispositions are rarely granted. There are several principles that the courts typically consider in deciding whether to

20

grant summary disposition. First, the movant must clearly be entitled to relief on the merits. That is not the case here as all of the arguments put forth by Chevron have been refuted and if not meritless, then at a minimum debatable. *See*, *Cascade Broad. Group, Ltd. v. FCC*, 822 F.2d 1172, 1174 (D.C. Cir. 1987) [**summary disposition is appropriate "only where the moving party has carried the heavy burden of demonstrating that the record and the motion papers comprise a basis adequate to allow the fullest consideration necessary to a just determination**"]; *see also*, *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987) ["**A party seeking summary disposition bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified.**"]

Aside from the foregoing, it must be efficient and equitable to resolve the case through summary disposition instead of a "traditional" appellate process. *See*, *Groendyke Transp.*, 406 F.2d at 1162.

B.  <u>As Briefed Herein and in Appellant's Opening Brief, Chevron's Arguments Concerning Jurisdictional Grounds, Attorney Fees Calculation, Law of the Case Doctrine and  that Appellant's Remaining Grounds are Allegedly Insubstantial to Warrant Appeal is Meritless and Summary Affirmance Must be Denied as a Matter of Law.</u>

Chevron understandably wants this case dismissed to remove the spotlight from their intransigence. However, as briefed herein, the arguments for summary affirmance are anemic and nothing more than smoke and mirrors. Both Chevron and Appellant acknowledge in their briefing that the filing of the appeal was timely

to confer jurisdiction. While Chevron, flip-flops on procedural rules, Chevron omits Ninth Circuit authority and procedural authority that confirms sanctions awards are appealed after a judgment is issued. In terms of Chevron's assertion that Appellant did not address calculation of attorneys' fees in briefing, it would appear they did not fully read the briefing as attorneys' fees was briefed. As for the law of the case doctrine, as addressed above, Chevron's motion performs no analysis of the exceptions contained in the *Bible* case they cite, likely because they didn't read *Bible*. As for the arguing that "punitive sanctions" versus "compensatory sanctions" is an insubstantial argument, well that is the crux of this whole appeal. Appellant was denied due process and this should not only be unacceptable to an attorney sanctioned, it should be unacceptable to this Honorable Court.

## V.    CONCLUSION

Based on the foregoing, Appellant respectfully asks that Chevron's Motion for Summary Disposition be denied.

*Respectfully submitted this 20th day of May, 2024*

/s/ Edward C. Chung
Edward C. Chung, WSBA# 34292
CHUNG, MALHAS & MANTEL, PLLC
1037 NE 65th Street, Suite 80171
Seattle, Washington 98115
Phone: (206) 264-8999
*Attorney for Appellants*

22

## <u>**CERTIFICATE OF COMPLIANCE**</u>

In accordance with FRAP 27-1 (d) 1 and (2) the foregoing motion does not

exceed 5,200 words and complies with Ninth Circuit Court formatting requirements.

Date this 20th day of May 2024,


/s/ Edward C. Chung
Edward C. Chung, WSBA# 34292
Counsel for Appellants

## I.     <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*Dated this 20th day of May 2024*

/s/ Edward C. Chung
Edward C. Chung, WSBA# 34292
CHUNG, MALHAS & MANTEL, PLLC
1037 NE 65th Street, Suite 80171
Seattle, Washington 98115
Phone: (206) 264-8999
*Attorney for Appellant*

24